**Frederick LANE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–07–00133–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 20, 2008.

Joseph Salhab, Houston, for appellant.

Jessica Akins McDonald, Houston, for the State.

Panel consists of Chief Justice HEDGES, and Justices ANDERSON and BOYCE.

## OPINION

JOHN S. ANDERSON, Justice.

Appellant, Frederick Lane, was found guilty by a jury of aggravated sexual assault of a child under the age of fourteen. *See* Tex. Pen.Code Ann. § 22.021 (Vernon 2003). The jury sentenced appellant to sixty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In a single issue on appeal, appellant contends he received ineffective assistance of counsel. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant does not question the sufficiency of the evidence to support the jury's verdict. Therefore, we will only discuss the facts as they relate to appellant's complaint on appeal.

Appellant is the father of complainant E.A.'s half-brother, and he lived with E.A.'s family during the time she was five to eight years old. E.A. testified appellant sexually assaulted her both during the night and during the day before she would leave for school. According to E.A., appellant forced her to perform oral sex on him and penetrated her anus with his penis. E.A. testified that when appellant assaulted her during the night, he first would shake her awake in her bed; grab her by the arm; and lead her to the bathroom down the hall from her bedroom. E.A. testified appellant would then sexually assault her in the bathroom before sending her back to bed. E.A. testified appellant sexually assaulted her both during the night and during the day before she would leave for school. E.A. also testified appellant threatened to kill her family if she told anyone about the abuse. E.A. feared appellant, even after he left E.A.'s house. E.A. told no one about the abuse until she was eighteen years old. E.A. came forward to report the alleged sexual assaults only after she learned appellant had a daughter of his own. Since reporting the sexual assaults, E.A. has been diagnosed with post-traumatic stress disorder and undergoes weekly therapy. At the time of appellant's trial, E.A. was twenty-four years old.

Significant portions of E.A.'s testimony were corroborated by eyewitness testimony from her sister, N.A., who is five years

older than E.A. During the guilt/innocence phase of the trial, N.A. testified that during the time period when appellant lived in their house, she slept in the same bed with E.A. N.A. testified she remembered appellant waking up E.A. in bed late at night after everyone else was asleep, telling E.A. to get up and follow him, and leading E.A. to the bathroom down the hall. N.A. testified she saw appellant go into the bathroom with E.A. N.A. testified this happened "like, every other night." N.A. pretended to be asleep when appellant came in the bedroom to get E.A., but she would remain awake until E.A. returned to bed. N.A. never asked E.A. what happened in the bathroom because N.A. was scared.

E.A. testified appellant is not wealthy; she has no plans to file a civil suit against him; and there are no child custody or divorce proceedings between appellant and E.A.'s mother involving E.A.'s half-brother. N.A. testified neither she nor her family knew of any motive E.A. might have to testify against appellant aside from the sexual assaults. Appellant does not contend on appeal this testimony was inadmissible, or that defense counsel should have objected to it.

During appellant's trial, the State also called Dr. Lawrence Thompson, Jr., the director of therapy and psychological services for the Children's Assessment Center in Houston, to testify as an expert in the field of child abuse and post-traumatic stress disorder. According to Dr. Thompson, there is a delay in disclosure in over half of all cases of child sexual abuse. Dr. Thompson testified the delay can be anywhere from weeks to years between the abuse and the child victim reporting the abuse. In addition, Dr. Thompson testified there are many reasons for the delayed outcry, including the child's feelings of guilt and shame, manipulation or threats by the perpetrator to harm the child or the child's family, and the child's fear the report of abuse will not be believed. Dr. Thompson also testified regarding false allegations of child abuse. During his testimony, the following exchange occurred:

[Prosecutor] Q: How about false allegations? Is that a big part of the studies regarding sexual abuse?

[Dr. Thompson] A: No, it's not a big, big part. It is something that happens. There are false allegations of child sexual abuse, but what I can tell you from the research and my clinical experience is that those allegations are extremely rare.

[Defense Counsel]: Judge, I object to that as interjecting the credibility to a group of people.

The Court: Sustained.

[Prosecutor] Q: Is this based on your training and experience in general, that is, the study of or the looking at the false accusations, is that something that you have done through your education and through your training and through your experience?

[Dr. Thompson] A: I have definitely observed all areas of child sexual abuse, including false allegations.

[Prosecutor] Q: And so how do you go about separating in a general way scientifically between a true allegation and a false allegation?

[Dr. Thompson] A: Well, in the false allegation abuse that I in my clinical experience has [sic] observed—have observed, the theme that was present in that was an adult coercing a child to say something happened that didn't happen. Coaching is what it is referred to in the literature. So we have an adult coaching a child to say they were abused when they were not abused.

And, again, it is a rare occurrence, but it is something that is documented in the literature and coaching of children has unfortunately happened, but it is a rare occurrence.

While appellant's trial counsel lodged an objection to Dr. Thompson's testimony, which the trial court sustained, he did not request an instruction to the jury to disregard or move for a mistrial. In addition, even though the trial court sustained his objection to Dr. Thompson's initial testimony on the relative rarity of false testimony of childhood sexual assault, appellant's trial counsel did not object when Dr. Thompson continued testifying to that effect. Then, during his cross-examination of Dr. Thompson, appellant's trial counsel revisited the issue of false testimony when he asked:

> [Defense Counsel]: Okay. You indicated—you've indicated that the majority of false allegations involve an adult coaching a child?
>
> [Dr. Thompson]: Yes. Yes, in my clinical experience and in the literature.
>
> * * *
>
> [Defense Counsel]: Have there been studies done to determine, give us any information, any data, about adults making false accusations and claiming that they were the victim?
>
> [Dr. Thompson]: No, there are no studies that I am aware of specific to that, but the general studies that I am aware of regarding all victims of child sexual abuse, adult or child, consistently show that child or adult do not make—tend to make false allegations of child sexual abuse.
>
> [Defense Counsel]: Your Honor, I would object to that as being unresponsive and attributing credibility to a group of people, which includes the complainant in this case.

> The Court: Listen to the question and answer the question asked, please.

While appellant's trial counsel objected to Dr. Thompson's testimony as non-responsive, he did not obtain a ruling from the trial court on his objection.

The State also called Myrna Engler, a social worker who counsels abuse victims, including E.A., at the Children's Assessment Center. Ms. Engler had counseled E.A. on a weekly basis for fourteen weeks at the time of appellant's trial. Ms. Engler testified that, in her opinion formed after counseling E.A. for those fourteen sessions, E.A. had post-traumatic stress disorder caused by childhood sexual abuse. Appellant's trial counsel did not object to this testimony.

During the State's closing argument, the State's prosecutor emphasized the testimony of Dr. Thompson and Ms. Engler:

> [Prosecutor]: Also, the experts, not only do they have all this training and experience and education that we usually don't have, in our case here you have Ms. Engler who actually spent 14 hours with the victim, not just the time we spent with her, but every week, hour after hour after hour. And that could help you, if it does, decide whether or not [the complainant] is a credible person. That's why the experts brought to you and we talked about experts and everybody said that they can keep an open mind and listen to experts.
>
> * * *
>
> [Prosecutor]: We learned from the expert that fabrications on sexual assault is extremely rare based on the paper, the studies, and the research. That's what the experts tell you and that's what they testify to. It is extremely rare that somebody would come up and just make an allegation like that.

When you think of an allegation like that, though, what's the first thing you do, like I talked about earlier? The credibility of the witness. Well, what's going on? Is the allegation being made because it is true or is there some other reason?

The jury found appellant guilty of aggravated sexual assault of a child and assessed appellant's punishment at sixty years' confinement. This appeal followed.

## DISCUSSION

In a single issue on appeal, appellant contends he received ineffective assistance of counsel because his trial counsel failed to (1) properly challenge and exclude Dr. Thompson's testimony regarding false allegations of sexual assault by children; and (2) lodge any objection to Ms. Engler's testimony that E.A. had post-traumatic stress disorder caused by childhood sexual abuse. Appellant's trial counsel filed a motion for new trial; however, the motion did not raise ineffective assistance of counsel as a basis for the trial court to grant him a new trial.

## I. The Standard of Review

In reviewing claims of ineffective assistance of counsel, we apply a two-prong test. *See Salinas v. State,* 163 S.W.3d 734, 740 (Tex.Crim.App.2005) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). To establish ineffective assistance of counsel, appellant must prove by a preponderance of the evidence that (1) his trial counsel's representation was deficient in that it fell below the standard of prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Id.*

▆▆▆ An accused is entitled to reasonably effective assistance of counsel.

*King v. State,* 649 S.W.2d 42, 44 (Tex. Crim.App.1983). When evaluating a claim of ineffective assistance, the appellate court looks to the totality of the representation and the particular circumstances of each case. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). There is a strong presumption that counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *Salinas,* 163 S.W.3d at 740; *Stults v. State,* 23 S.W.3d 198, 208 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson,* 9 S.W.3d at 814. When determining the validity of an ineffective assistance of counsel claim, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984). When the record is silent as to the reasons for counsel's conduct, a finding that counsel was ineffective would normally require impermissible speculation by the appellate court. *Stults,* 23 S.W.3d at 208. Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *Bone v. State,* 77 S.W.3d 828, 833 (Tex. Crim.App.2002). However, when no reasonable trial strategy could justify trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective reasons for acting as he did. *Andrews v. State,* 159 S.W.3d 98, 102 (Tex.Crim.App.2005). If a criminal defendant can prove trial

counsel's performance was deficient, he must still affirmatively prove he was prejudiced by counsel's actions. *Thompson*, 9 S.W.3d at 812. This requires the defendant to demonstrate a reasonable probability that the result of the proceeding would have been different if trial counsel had acted professionally. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App.2001).

## II. Did Appellant Receive Ineffective Assistance of Counsel?

### A. Was Trial Counsel's Performance Deficient?

■ Appellant claims he received ineffective assistance of counsel, in part, because his trial counsel failed to properly challenge and exclude Dr. Thompson's testimony regarding the rarity of false allegations of sexual assault by children. Appellant also complains of his trial counsel's failure to lodge any objection to the testimony of Ms. Engler regarding her opinion E.A. had post-traumatic stress disorder caused by childhood sexual abuse. According to appellant, both experts' testimony was inadmissible because it constituted opinion testimony on complainant's truthfulness. Because there can be no plausible trial strategy for failing to properly challenge Dr. Thompson's testimony or failing to lodge any objection to Ms. Engler's testimony, we agree with appellant this is a case in which the record on direct appeal is sufficient to decide whether appellant's trial counsel's performance was deficient.

■ Because it is jurors who must decide the credibility of the parties in issue,

expert opinions on the truthfulness of a child complainant's allegation or that a class of persons the complainant belongs to is truthful, are prohibited. *Yount v. State*, 872 S.W.2d 706, 708, 710–12 (Tex.Crim. App.1993). Dr. Thompson's testimony that false accusations of childhood sexual assault are very rare had the effect of telling the jury they could believe E.A.'s testimony, which is expressly forbidden. *Id.* at 711. In addition, Ms. Engler's testimony she counseled complainant for fourteen weeks and determined E.A. had been sexually assaulted was direct testimony the complainant was truthful, which is also prohibited. *Id.*

The fact appellant's trial counsel lodged an objection to Dr. Thompson's testimony indicates he was aware this testimony was inadmissible.[1] However, once the trial court sustained the objection, appellant's trial counsel failed to take the required next step to preserve appellate review by moving to instruct the jury to disregard the improper testimony. *Young v. State*, 137 S.W.3d 65, 69–70 (Tex.Crim.App.2004). In addition, by failing to lodge any objection to Dr. Thompson's subsequent testimony and the testimony of Ms. Engler, appellant was precluded from appellate review of that testimony. *Id.* Even though there is nothing in the record on appeal explaining appellant's trial counsel's subjective trial strategy for allowing this testimony into evidence, there is no conceivable strategy or tactic that would justify allowing this inadmissible testimony in front of the jury. *Fuller v. State*, 224 S.W.3d 823, 836 (Tex.App.-Texarkana 2007, no pet.); *Sessums v. State*, 129 S.W.3d 242, 248 (Tex.App.-Texarkana 2004, pet. ref'd);

---

1. The fact appellant's trial counsel attempted to prevent the admission of some of the inadmissible expert testimony defeats any argument appellant's trial counsel was following a trial strategy (1) of not objecting to the testi-mony in order not to emphasize the critical nature of the testimony in front of the jury; or (2) aimed at discrediting E.A. by using the State's experts.

*Miller v. State*, 757 S.W.2d 880, 884 (Tex. App.-Dallas 1988, pet. ref'd). Accordingly, we determine appellant's trial counsel's performance was deficient.

In their response brief, the State cites *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim.App.1997), and *Wright v. State*, 223 S.W.3d 36, 44 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd), for the proposition that Dr. Thompson's testimony regarding false testimony was admissible as long as he did not directly comment on E.A.'s truthfulness. We disagree these cases stand for the proposition that an expert witness can testify that a person or class of persons is truthful.

In *Schutz*, the Court of Criminal Appeals, after determining the defendant's trial counsel rendered deficient performance, reversed and remanded the case to the court of appeals to conduct a harmless error analysis. *Schutz*, 957 S.W.2d at 74. While the Court of Criminal Appeals did state expert testimony does not assist the jury if it constitutes a direct opinion on the truthfulness of a child complainant's allegations, it did not hold expert testimony on the truthfulness of a class of people the complainant belongs to is admissible. *Id.* at 59. Instead, the Court of Criminal Appeals held expert testimony on the capability of a group considered legally impaired, such as young children, to distinguish reality from fantasy, and to perceive, remember, and relate the kinds of events at issue in the case, is admissible as long as it does not focus on the individual witness. *Id.* at 70. Neither Dr. Thompson's nor Ms. Engler's testimony addressed the ability of an impaired class to perceive and remember the type of events underlying this case and therefore *Schutz* does not support the State's position.

In *Wright*, the court of appeals determined the defendant received ineffective assistance of counsel based on trial counsel's failure to make a reasonable investigation of the defendant's case. *Wright*, 223 S.W.3d at 44–45. In dicta, the court of appeals stated expert testimony regarding false allegations of sexual assault occurring after a divorce and the accepted protocols for interviewing suspected child sexual assault victims would have been admissible as long as the expert did not comment on the truthfulness of the complainant. *Id.* at 44. However, even if *Wright* represented binding authority on this court, it is factually distinguishable as our case does not involve a child complainant whose parents are engaged in a divorce, but instead involves an adult complainant who alleged she was sexually assaulted as a child.

**B. Was Appellant Prejudiced By Trial Counsel's Deficient Performance?**

Having determined appellant's trial counsel's performance was deficient, we must decide if, as a result of that deficient performance, there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Salinas*, 163 S.W.3d at 740. In other words, we must determine whether there is a probability sufficient to undermine confidence in the outcome. *Miller*, 757 S.W.2d at 884.

The facts of this case distinguish it from the cases cited by appellant in support of his argument he was prejudiced by his trial counsel's deficient performance. In each of appellant's cases, there was no eyewitness testimony corroborating the victim's testimony that he or she had been sexually assaulted. *See Fuller*, 224 S.W.3d at 837 ("This case was a swearing match between the complainant and [defendant].")*; Sessums*, 129 S.W.3d at 245 (the court of appeals stated there was no eyewitness testimony or medical evidence of sexual assault); *Miller*, 757 S.W.2d at 881 (the court of appeals noted there was no medical evidence of sexual assault and the

primary issue at trial was the credibility of the complainant). Here, because E.A.'s sister corroborated significant details of E.A.'s testimony regarding the abuse, resolution of the credibility issue was not dependent upon the challenged expert testimony. Finally, there is little basis for attributing the length of the sentence imposed on appellant to the experts' testimony rather than the testimony of complainant's sister N.A. during the punishment phase. N.A. testified she too had been sexually abused by appellant under circumstances similar to those described by the complainant, and this testimony is unchallenged on appeal. Accordingly, we hold appellant has not established the second *Strickland* prong: a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. Failure to prove both prongs vitiates the claim of ineffective assistance of counsel. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d 674. We overrule appellant's single issue on appeal.

CONCLUSION

Having overruled appellant's only issue on appeal, we affirm the judgment of the trial court.