Affirmed and Memorandum Opinion filed February 15, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-01037-CR

___________________

 

Shane O'Grady, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 412th District Court

Brazoria County,
Texas



Trial Court Cause No. 58,863

 



 

 

MEMORANDUM OPINION

A jury found appellant Shane O’Grady
guilty of aggravated assault with a deadly weapon and sentenced him to thirty
years’ imprisonment and a $10,000 fine.  O’Grady appeals his conviction on the
ground that he received ineffective assistance of counsel at trial.  We
affirm.  


I

Shane O’Grady was convicted of aggravated assault
with a deadly weapon for locking his then-wife in a hotel room and threatening
to shoot her.  Shane and Amye O’Grady were married in 2004, but had separated
by December 2007.  A divorce action was pending when the incident giving rise
to this case occurred on September 28, 2008.  On that day, Shane contacted Amye
and asked her to pick him up at his brother’s house and take him to have a check
cashed so that he could make a child-support payment.  Amye picked Shane up and
began to drive him to a check-cashing business in Lake Jackson.  On the way,
Shane asked Amye to stop at a motel where he had been staying so he could get
his wallet.  Upon arriving at the motel, Shane asked Amye to come inside the
room with him to collect some items he had bought for their daughter.  

Once inside, Shane locked the door and told Amye to
sit down.  Amye testified Shane said he wanted closure and that holding her in
the room was the only way to get it.  When Amye objected, Shane opened the door
and told her she could leave, but before she could do so he again shut and
locked the door.  Amye testified Shane then pulled out a handgun and told her
she was “not going anywhere.”  Amye testified that she and Shane sat down
across from each other at a table and that Shane said he was going to kill
himself and she would have to watch so it “would be imprinted on [her] brain
forever.”  Amye further testified Shane said he considered killing her but did
not want to leave their daughter without both parents.  When Amye denied
Shane’s accusation that she had cheated on him, Amye testified Shane threatened
to shoot her in the shoulder.  Amye testified Shane held her captive for
approximately four hours, during which he made repeated threats to shoot her.  

During the exchange, Amye was able to surreptitiously
dial 911 on her cell phone.  Although she could not speak, she kept the line
open for about 40 minutes until Shane discovered the cell phone and took it
from her.  A recording of the call was played for the jury.  Amye testified
Shane told her he would shoot her and himself when police arrived.  The police,
however, were dispatched to Shane’s brother’s home under the mistaken belief
that the incident was taking place between Shawn O’Grady, Shane’s brother, and
his wife, Dorothy.  

Amye and Shane eventually left the motel room after
Amye defused the situation by agreeing to reconcile their relationship.  They
returned to Shawn O’Grady’s home, where they learned police had responded to
that location.  Amye whispered in Dorothy O’Grady’s ear that she needed to
speak with her.  Amye testified that the next day Dorothy told her that Shane
admitted everything that had happened.  Dorothy testified that conversation
took place over a phone call in which Amye asked if Shane told Dorothy about
what happened, to which Dorothy answered “yeah.”  The jury found Shane guilty
of aggravated assault with a deadly weapon and sentenced him to 30 years’
imprisonment and a $10,000 fine.  

II

A

Shane’s sole complaint on appeal is that he received
ineffective assistance of counsel at trial.  Shane contends his counsel made an
“unsound strategic decision” by introducing evidence that he was arrested for
violation of a protective order issued as a result of the incident giving rise
to this case.  Shane also argues that his counsel’s reference in closing
argument to the protective order as “a piece of paper, not very bullet proof”
could only inflame a jury concerned for Amye’s safety.  Shane further complains
that counsel’s decision to introduce evidence of Shane’s threat to kill her or
himself if she talked to Dorothy about the incident was “unreasonable and can
have no strategic value.”  Counsel’s “unsound strategic decisions” also include
eliciting evidence from Dorothy that Shane admitted to the incident and to
having a gun.  Lastly, Shane complains his counsel admitted Shane’s guilt
during closing argument by conceding Shane was in the motel room and that the
911 tape is trustworthy.  

 

B

An accused is entitled to
reasonably effective assistance of counsel.  Strickland v. Washington,
466 U.S. 668, 687 (1984); King v. State, 649 S.W.2d 42, 44 (Tex. Crim.
App. 1983).  In reviewing claims of ineffective assistance of counsel, we apply
a two-prong test.  See Salinas v. State, 163 S.W.3d 734, 740 (Tex. Crim.
App. 2005) (citing Strickland, 466 U.S. at 687).  To establish
ineffective assistance, an appellant must prove by a preponderance of the
evidence that (1) his trial counsel’s representation fell below an objective
standard of reasonableness, and (2) there is a reasonable probability that, but
for counsel’s deficient performance, the result of the trial would have been
different.  Strickland, 466 U.S. at 687; Mallett v. State, 65
S.W.3d 59, 63 (Tex. Crim. App. 2001).  If a criminal defendant can prove that
trial counsel’s performance was deficient, he must still affirmatively prove
that counsel’s actions prejudiced him.  Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999).  To demonstrate prejudice, a defendant must
establish a reasonable probability that the result of the proceeding would have
been different if trial counsel had acted professionally.  Id.  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Mallett, 65 S.W.3d at 63.  

When evaluating a claim of
ineffective assistance, the appellate court looks to the totality of the
representation and the particular circumstances of each case.  Thompson,
9 S.W.3d at 813.  In making such an evaluation, any judicial review must be
highly deferential to trial counsel and avoid the distorting effects of
hindsight.  Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)
(citing Strickland, 466 U.S. at 689).  As such, there is a strong
presumption that counsel’s conduct fell within a wide range of reasonable
representation.  Salinas, 163 S.W.3d at 740.  The appellant bears the
burden of proving by a preponderance of the evidence that counsel was
ineffective.  Thompson, 9 S.W.3d at 813 (citing Cannon v. State,
668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).  To overcome the presumption of
reasonable professional assistance, any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.  Thompson, 9 S.W.3d at 814.  Direct appeal is
usually an inadequate vehicle for raising such a claim because the record is
generally undeveloped.  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex.
Crim. App. 2005).  When the record is silent as to trial counsel’s strategy, we
will not conclude that defense counsel’s assistance was ineffective unless the
challenged conduct was “‘so outrageous that no competent attorney would have
engaged in it.’”  Id. (quoting Garcia v. State, 57 S.W.3d 436,
440 (Tex. Crim. App. 2001)).  

C

The record in this case is
silent as to the reasons for counsel’s actions.  Shane has therefore failed to
rebut the presumption that counsel’s conduct fell within the range of
reasonable representation.  See Salinas, 163 S.W.3d at 740.  As such, we
do not judge counsel’s strategic decisions in hindsight; rather, the review of
counsel’s representation is highly deferential and presumes that his actions
were reasonable.  See Thompson, 9 S.W.3d at 812–13; see also Lane
v. State, 257 S.W.3d 22, 26 (Tex. App.—Houston [14th Dist.] 2008, pet.
ref’d).  

Nor was counsel’s conduct
“so outrageous that no competent attorney would have engaged in it.”  See Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).  It was not in dispute
that Shane was in the motel room with Amye and produced a handgun.  As such, it
was not unreasonable for counsel to concede these points, nor was it
unreasonable to adopt a strategy in which counsel attempted to negate the
element of intent required for aggravated assault and undermine Amye’s
credibility.  Counsel also attempted to show that the charges against Shane
were motivated by their child-custody dispute and that Amye never acted fearful
of violence from Shane.  This strategy was manifested in part by counsel
introducing evidence of Shane’s arrest and further establishing Amye did not
immediately report to police Shane’s violation of the protective order.  During
closing argument, counsel referenced the protective order as “a piece of paper,
not very bulletproof” when suggesting to the jury that Amye did not fear Shane because
she did not check to see whether he was in jail.  While counsel’s strategy was
ultimately unsuccessful in avoiding a conviction, we cannot say it was
unreasonable, and it certainly was not outrageous to the extent that no
competent attorney would have pursued similar tactics.  Shane’s sole issue is
overruled.    

* * *

For the
foregoing reasons, we affirm the trial court’s judgment.

 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown

Do
Not Publish — Tex. R. App. P. 47.2(b).