

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL A. RODRIGUEZ, | § | No. 08-23-00121-CR |
| Appellant, | § | Appeal from the |
| v. | § | 226th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2022CR2561) |

## MEMORANDUM OPINION[1]

Appellant Michael Rodriguez was convicted by a jury of the offense of continuous sexual abuse of a young child. The trial court subsequently sentenced him to 35 years' imprisonment. He brings three issues on appeal, all of which contend his trial attorney provided him ineffective assistance of counsel. We affirm.

## BACKGROUND

In January 2021, when J.D.[2] was approximately nine years old, she told her mother that her father, Rodriguez, sexually abused her during his custodial visits. After an investigation, a

---

[1] We hear this case on transfer from the Fourth Court of Appeals in San Antonio and apply that court's precedent as required by TEX. R. APP. P. 41.3.

[2] Because the complaining witness was a minor at the time the offense was committed, we use a psuedonym, rather than a name, for privacy protection. *See* TEX. R. APP. P. 9.10(a)(3).

grand jury indicted Rodriguez for continuous sexual abuse of a young child in violation of Texas Penal Code § 21.02.

The trial court held a four-day trial in January 2023, during which the State presented evidence through ten witnesses. Only a small portion of the testimony from three witnesses is relevant to Rodriguez's ineffective assistance of counsel claims. First, Betty Mercer, a sexual assault nurse examiner (S.A.N.E.) at the Children's Hospital of San Antonio testified regarding the details of her January 2021 examination of J.D. She also testified that she had approximately 200 hours of classroom and clinical training through the Texas Attorney General's Office before becoming a S.A.N.E., 26 years before her testimony at trial. During those 26 years, she had conducted close to 4,000 S.A.N.E. examinations.

Second, Holly Willson testified that she interviewed J.D. in her role as a forensic interviewer with a trauma-informed advocacy center called Childsafe. In the course of her testimony, the State asked Willson how J.D. physically presented to her:

> Q.     Okay. So [J.D.], when she came in, how did she present?
>
> A.     She came in. She was able to have a rapport with me, was able to answer my questions. I didn't notice anything that was different from—too different than my other interviews that I conducted. There wasn't anything that stood out to me that was concerning or anything that—like I said, she just—she was calm; she was able to answer all my questions.
>
> Q.     Do you remember if she was consistent in how she spoke to you about the allegations?
>
> A.     Yes. From what I recall, yes.

The State then moved on to ask Willson questions about the substance of the interview with J.D. Relevant to this appeal is the following portion of her testimony:

> Q.     Do you remember if she gave any sensory details?

2

A.      Yes. She did provide sensory details.

Q.      As well as factual allegations?

A.      Well, the allegations that I knew about before we went into the room, she was able to talk about that. Yes.

Q.      And that information that you knew prior, was that coming from the detective that referred you guys?

A.      Yes.

The State then passed Willson for cross-examination.

The third witness relevant to this appeal is Robert Ramos, a detective with the San Antonio Police Department. Detective Ramos testified regarding his April 2021 encounter with Rodriguez. Part of his testimony mentions Rodriguez volunteering and then refusing to take a polygraph test:

Q.      And were—how did this come about that you were supposed to do this?

A.      I—I was contacted by the handling detective, and he had informed me that the defendant had pushed to take the polygraph exam in regards to the accusations against him.

.      .      .

Q.      Okay. Did you conduct a polygraph examination of the defendant?

A.      No, sir.

Rodriguez's trial counsel did not object to any of Detective Ramos's testimony regarding a polygraph test.

The jury found Rodriguez guilty of continuous sexual abuse of his daughter, J.D. And the trial court subsequently sentenced him to 35 years of imprisonment. This appeal followed.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Rodriguez presents three issues for review in which he complains that his trial counsel rendered ineffective assistance of counsel. In his first issue, Rodriguez complains his trial counsel was ineffective for failing to request a hearing regarding the qualifications of Mercer in testifying as a S.A.N.E. pursuant to Texas Rule of Evidence 705. In his second issue, Rodriguez claims his trial counsel's representation fell below an objective standard of reasonableness by failing to object to Willson's testimony, which he claims had bolstered the credibility of J.D. In his third issue, Rodriguez claims his trial counsel rendered ineffective assistance when he failed to object to Detective Ramos's testimony regarding a polygraph test.

We will address Rodriguez's first and third issues in a single analysis because we resolve them on the same basis. We then consider his second issue separately.

### A. Standard of review and applicable law

To prevail on an ineffective-assistance-of-counsel claim, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668 687-88 (1984); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018). A defendant's failure to make either of the required showings defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003) (en banc). Judicial scrutiny of trial counsel's performance "must be highly deferential" and we are instructed to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 110 (citing *Strickland*, 466 U.S. at 689).

4

The record must be sufficiently developed to overcome the strong presumption of reasonable assistance. *See Id.* at 110-11. As recognized by the United States Supreme Court, the lack of any explanation in the record on direct appeal for trial counsel's actions or inactions often precludes any valid consideration of whether counsel's performance was deficient:

> If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reason for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. . . . The trial record may contain no evidence of alleged errors of omission, much less the reason underlying them.

*Massaro v. United States*, 538 U.S. 500, 505 (2003). Thus, as a general rule, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance with which we afford counsel's actions or inactions in our review of an ineffective-assistance claim. *Rylander*, 101 S.W.3d at 110–11. Thus, we will assume a strategic motive if any can be imagined, and as a corollary, we will find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). We further note that trial counsel should ordinarily be given an opportunity to explain their actions before being denounced as ineffective. *Rylander*, 101 S.W.3d at 111.

### B. Discussion

#### (1) Grounds lacking a record

In his first and third issues, Rodriguez argues that trial counsel rendered ineffective assistance of counsel on two independent grounds: (1) failing to seek a hearing with regard to Mercer's qualifications as an expert; and (2) failing to object to the introduction of testimony regarding his refusal to take a polygraph examination.

The record in this case is silent as to why trial counsel made the particular decisions about which Rodriguez now complains of on appeal. There was not a motion for new trial or similar proceeding in which Rodriguez's trial counsel was allowed to explain his actions. Further, the alleged deficiencies Rodriguez identifies in his first and third issues—not requesting a qualification hearing regarding Betty Mercer's testimony as a S.A.N.E. and his counsel's failure to object to Detective Ramos's testimony regarding a polygraph test—do not qualify as being so outrageous that no competent attorney would follow suit. *Saenz v. State*, 103 S.W.3d 541, 546 (Tex. App.—San Antonio 2003, pet. ref'd) ("Rule 705(b) allows counsel to voir dire expert witnesses outside the presence of the jury to learn what facts the expert is basing his or her opinion on. . . . However, neither the rule nor the case law creates a presumption of error if counsel fails to request voir dire."); *Ex parte Bryant*, 448 S.W.3d 29, 40 (Tex. Crim. App. 2014) ("Instead, we hold that, although the introduction of polygraph evidence almost always falls below an objective standard of reasonableness because most attorneys will have no reasonable strategy in allowing the introduction of such evidence, we cannot categorically exclude the possibility that a trial attorney, under certain circumstances, could use the admission of polygraph evidence to his client's favor.").

As a result, because the record is not sufficiently developed to overcome the presumption of reasonable assistance in regard to these two issues, we overrule Rodriguez's first and third issues. *Rylander,* 101 S.W.3d at 110 (holding that a defendant's failure to prove either required element defeats his ineffective assistance of counsel claim).

### (2) Failure to object to truthfulness testimony

In his second issue, Rodriguez complains his trial counsel was ineffective because he did not object to forensic interviewer Holly Willson's testimony that J.D.'s allegations were truthful.

Because it is the jurors that must decide the credibility of a witness, opinion testimony on the truthfulness of a child complainant's allegations is inadmissible. *Lane v. State*, 257 S.W.3d 22, 27 (Tex. App.—Houston [14th Dist] 2008, pet. ref'd). And because there is no plausible trial strategy for failing to object to this type of testimony, such failure can constitute deficient performance even without an explanation in the record from trial counsel. *Id.* ("Because there can be no plausible trial strategy for failing to properly challenge [psychologist's testimony] or failing to lodge any objection to [social worker's testimony], we agree with appellant this is a case in which the record on direct appeal is sufficient to decide whether appellant's trial counsel's performance was deficient.").

In his brief, Rodriguez quotes the following exchange between the State and Willson as constituting impermissible bolstering testimony to which his counsel should have objected:

> Q. Do you remember if [J.D.] was consistent in how she spoke to you about the allegations?
>
> A. Yes. From [what] I recall, yes.
>
> . . . .
>
> Q. And the information that you knew prior, was that coming from the detective that referred you guys?
>
> A. Yes.

The State contends that Rodriguez's quote of Willson's testimony is an incomplete representation done to make it appear as though Willson was providing an opinion regarding the truthfulness of J.D.'s allegations. We agree with the State.

A review of the record shows that Willson's testimony regarding the "consistency" of J.D. did not pertain to the allegations against Rodriguez. Instead, Willson testified that J.D.'s demeanor

was calm throughout her forensic interview and she was not resistant or incapable of talking about the factual allegations of the case:

> Q.    Okay. So [J.D.], when she came in, how did she present?
>
> A.    She came in. She was able to have a rapport with me, was able to answer my questions. I didn't notice anything that was different from—too different than my other interviews that I conducted. There wasn't anything that stood out to me that was concerning or anything that—like I said, she just—she was calm; she was able to answer all my questions.
>
> Q.    Do you remember if she was consistent in how she spoke to you about the allegations?
>
> A.    Yes. From what I recall, yes.

Willson later testified that a detective told her about the allegations against Rodriguez before starting the forensic interview. The record shows, however, Willson did not testify that what J.D. told her during the interview was consistent with what she already knew from the Detective:

> Q.    Do you remember if she gave any sensory details?
>
> A.    Yes. She did provide sensory details.
>
> Q.    As well as factual allegations?
>
> A.    Well, the allegations that I knew about before we went into the room, she was able to talk about that. Yes.
>
> Q.    And that information that you knew prior, was that coming from the detective that referred you guys?
>
> A.    Yes.

As a result, we conclude the record does not support Rodriguez's contention that Willson's testimony included an inadmissible opinion regarding the truthfulness of J.D.'s allegations. Thus, there is no basis for us to conclude that Rodriguez's trial counsel was ineffective for failing to object to the testimony. *See Solis v. State*, No. 04-97-00426-CR, 1999 WL 248951, at *5 (Tex.

8

App.—San Antonio Apr. 28, 1999, no pet) (not designated for publication) (holding that it is not ineffective assistance if counsel's objections would have been futile). As a result, we overrule Rodriguez's second issue. *Rylander*, 101 S.W.3d at 110 (holding that a defendant's failure to prove either required element defeats his ineffective assistance of counsel claim).

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

GINA M. PALAFOX, Justice

September 27, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

(Do Not Publish)