Affirmed and Opinion of July 30, 2009 Withdrawn, and
Substitute Majority and Dissenting Opinions filed October 8, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-01061-CR

____________

 

MY THI TIEU, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Criminal Court at Law No. 12

Harris County, Texas

Trial Court Cause No. 1495630

 



 

SUBSTITUTE   MAJORITY   OPINION

Appellant My Thi Tieu filed a petition for discretionary
review.  Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our
opinion of July 30, 2009, and issue this substitute opinion in its place.








Appellant challenges the effectiveness of her trial counsel
in connection with her conviction for misdemeanor prostitution.  After the jury
found appellant guilty, the trial court assessed punishment as confinement for
180 days and a fine of $2,000.  Appellant=s sentence was suspended by the trial
court and she was placed on community supervision for one year.  Appellant
contends trial counsel provided ineffective assistance by (1) failing to object
to certain testimony from each of the State=s four witnesses; (2) failing to
object to improper jury argument during the State=s closing argument; and (3) asking
improper questions and eliciting damaging testimony during cross-examination of
the arresting officer.  We affirm.

Background

Appellant was charged by information with misdemeanor
prostitution stemming from an undercover investigation by the Houston Police
Department at the Thai Garden massage parlor on December 6, 2007.  Appellant
filed a motion on May 21, 2008 seeking community supervision, and a motion
requesting that the trial court assess punishment in the event of a guilty
verdict.  At trial, appellant entered a plea of not guilty in open court
through her trial counsel on June 18, 2008.

The State presented the testimony of the arresting officer,
Don Miller, and his supervisor, Sergeant Doug Hendrickson, during its
case-in-chief.  Appellant took the stand as the only defense witness.  The State
then called two additional officers involved in the investigation, Brian
Surginer and Robert Price, as rebuttal witnesses to refute appellant=s contention that a language barrier
mistakenly led police to believe she had agreed to engage in sexual conduct for
a fee.








Officer Miller testified without objection that (1) the Thai
Garden placed an advertisement in a publication used by Houston police to
locate massage parlors warranting investigation for prostitution; (2) someone
had posted a message on a website that critiques massage parlors stating that
the individual received masturbation at the Thai Garden; (3) Officer Miller was
not asked to fill out a medical form upon his arrival at the Thai Garden as he
would have been at a Alegitimate massage parlor@; (4) appellant led him to a bedroom
containing a mattress on the floor, but he was not provided with a towel to
cover himself as he would have been at a Alegitimate massage parlor@; (5) appellant told him to Aget comfortable,@ which is sex industry code for Aremove all of your clothing@; (6) appellant answered a call
during Officer Miller=s massage and told the caller C who asked if she performed AThai slides,@ which involve sliding bare breasts
along the customer=s body C to A[j]ust come in and see@; (7) appellant undressed and
continued massaging Officer Miller in the nude upon his agreement to pay an
additional $100; (8) appellant performed a AThai slide@ on him; (9) appellant would not
agree to perform oral sex or intercourse for a fee, but did agree to masturbate
Officer Miller for $100; and (10) appellant offered to let Officer Miller Afuck her tits@ as part of the activity included in
the additional $100 fee.  Officer Miller also testified that (1) he made an
appointment with appellant over the telephone, at which time she spoke English;
(2) appellant spoke English Avery well@ during his appointment; (3) appellant spoke English to him
and the other officers at the scene while they obtained her arrest information;
and (4) it is common for masseuses arrested for prostitution to claim falsely
after arrest that they do not speak English.

Officer Miller further testified that he had been a Houston
Police Department officer for 13 years, including seven years in the Vice
Division.  During direct examination by the State about the responsibilities of
Vice Division officers, the following exchange took place without objection:

STATE:          Do you do child
pornography?

MILLER:       Not only child
pornography, Internet porn, we work with the F.B.I. on a project called AInnocence Lost@
where we target juvenile street prostitution.  Or they=ll have, usually it=s
pimps pimping out.  You know, I=ve caught 14,
15-year-old girls.  Same with organized prostitution where it=s independents advertising on the back page, like
where I got this one on, or other Web sites and they=ll show up and it=ll
be a juvenile that=s being pimped out by certain individuals.  And when
they C the F.B.I. steps in because when they cross state
lines, it=s a Federal offense.

*                    *                    *








STATE:          What are some of the
ways that Vice learns about the different types of prostitution areas?

MILLER:       There are some that are
known, it=s called a circuit or a track; and they=re known throughout the United States.  Some of these
would include Bissonnet and the Southwest Freeway, Airline at Crosstimbers. 
These are well-known tracks where they=ll
bring in girls from all different states that work for maybe a week and then
they=ll move on to Dallas or move on to California.  With
the massage parlors, we see a lot of people coming from California.

STATE:          When you say Athey@ bring them in,
who are you talking about here?

MILLER:       The street prostitution,
usually it=s the pimps will bring their girls, work an area for a
period of time.  If the money=s good, which I=ve been told by the prostitutes the money=s good in Houston, they=ll stay.  A lot of times they=ll
leave if their C if the prostitute=s
arrested.  They=ll just jump because they know we=re not going to extradite them from California.  It=s not cost-effective.  When they get caught, they=ll fly to California.  They know that Houston=s not going to pick them up.  We don=t have the money to go pick them up for a misdemeanor
crime.

STATE:          You said C what about the massage parlors.  You=re talking about pimps and street prostitutes, who=s buying from massage parlors?

MILLER:       Massage parlors can be
independents.  They can be one person could own three or four.  They are cash
money making operations.  That=s to say that
the majority of their money is going to be in cash, not reported.  Some will _ like [appellant] has a massage license.  Some do. 
They=ll go through the school, yet they=ll masturbate because of the money.  A hundred dollars
extra on her massage, she=s making 70 and you=re
paying that up front and then later on, you=re
paying a hundred.  So, basically, she=s
making $170 an hour.  That=s not reported
to anybody.  That=s cash.  And figure 10, 20 customers a day, that=s a lot of money.

Appellant points to the absence of objections during this exchange as an
instance of trial counsel=s ineffective assistance.








During cross-examination of Officer Miller, appellant=s trial counsel asked him (1) how
many times, if any, he had lied in his life; (2) if he had ever had sex outside
of marriage; (3) if he had ever had sex with a prostitute while working
undercover; and (4) if he masturbated in the restroom after appellant massaged
him.  Appellant=s trial counsel also asked open-ended questions during
cross-examination that allowed Officer Miller to repeat his direct testimony
that appellant agreed to masturbate him for a fee.  Additionally, the following
exchange about which appellant complains took place during cross-examination of
Officer Miller:

DEFENSE COUNSEL:         Why didn=t you pay [appellant] the fee so there would be
evidence that she had agreed?

MILLER:                               I
don=t have to pay her the fee.  Once again, the State says
that she has to agree to it.  It doesn=t
say that I have to pay her.  Doesn=t
say I have to allow her to masturbate me.  It just said that she has to agree
to perform sexual contact, a sexual act, for a fee.  Who would C no one=s
going to do that.  No one=s going to want some whore jerking them off and
touching them.  I=m sorry.  Cop=s
not going to go that far.

DEFENSE COUNSEL:         I pass the
witness at this time, Your Honor.

Appellant points to this exchange as an instance of ineffective
assistance.








The State next called Sergeant Hendrickson, who testified
without objection that (1) Vice Division officers found an advertisement for
the Thai Garden in a publication known to advertise parlors warranting
investigation for prostitution; (2) he authorized an undercover investigation
at the Thai Garden involving Officers Miller, Surginer, and Price; (3) Officer
Miller called him from inside the Thai Garden to inform him that a Acase was made@ for prostitution; (4) Aget comfortable@ is sex industry code for Aremove all of your clothing@; and (5) two other masseuses at the
Thai Garden were detained and issued citations by police during their
investigation, but were not arrested or criminally charged.  Sergeant
Hendrickson further testified that (1) appellant spoke fluent English during
questioning after her arrest; and (2) it is common after a prostitution arrest
for defendants to pretend not to speak English and raise Amisunderstanding@ as a defense.  

Sergeant Hendrickson also testified that he had been with the
Houston Police Department for 38 years, 18 of which were spent in the Vice
Division.  During direct examination by the State about other crimes related to
prostitution, the following exchange took place without objection:

STATE:                      You said
there=s some crimes that go hand in hand.  What kind of
crimes go hand in hand with prostitution?

HENDRICKSON:     Organized crime, drug
related activities and there=s a lot of
money laundering and there=s a lot of
human trafficking that goes along with it.  We do that, too.

STATE:                      What C what do you mean by human trafficking?

HENDRICKSON:     Well, that=s where people take a lot of these prostitutes and
they move them from city to city, state to state, and sometimes it=s against their will.  Sometimes they=re doing it because they=re being threatened or their families are being threatened somewhere.

Appellant points to the absence of objections during this exchange as an
instance of ineffective assistance.

Appellant testified to the following during her
case-in-chief: (1) she had lived in Harris County for 19 years; (2) she speaks
only conversational English; (3) she is a licensed masseuse; (4) she did not
use the phrase Aget comfortable@ in speaking to Officer Miller; (5) she
leaves a towel on the massage bed for customers to cover themselves; (6) she
received no phone call while massaging Officer Miller; (7) she took her dress
off for a $100 fee, but not her bra and panties; (8) she did not perform any
sexual act on Officer Miller; (9) she did not offer to let Officer Miller Afuck her tits@; and (10) Officer Miller lied in his
testimony.








During cross-examination, the State asked appellant if she
had taken the test for her massage license in Houston.  After appellant
testified that she had done so, the State pointed out that Austin is the only
Texas city in which the test is translated for non-English speakers.  Appellant
also testified during cross-examination that (1) she has a Texas driver=s license and that the driver=s license test is administered in
English; and (2) performing a massage in a bra and panties is not allowed by
the Texas Department of State Health Services.  Appellant later testified on
re-direct examination that she took her massage licensing test in Austin. 
Appellant then rested her case.

To refute appellant=s contention that she spoke only
conversational English, the State called Officers Surginer and Price as
rebuttal witnesses.  Officer Surginer testified that (1) he had been a Houston
Police Officer for 29 years; and (2) appellant answered the door of the Thai
Garden and spoke Aclear, good English@ to him.  Appellant complains on
appeal about that portion of Officer Surginer=s testimony in which he stated that
(1) while Officer Miller was investigating appellant in one room of the Thai
Garden, Officer Surginer was in an adjacent room of the parlor investigating
another masseuse; (2) the masseuse Officer Surginer was investigating said that
she would masturbate him; and (3) Officer Surginer did not arrest the masseuse
he was investigating because she would not agree to a specific fee for
masturbating him.

Officer Price testified that (1) he had worked in the Vice
Division of the Houston Police Department for 24 years; (2) he observed
appellant speaking English Avery well@ without Aa heavy accent or broken English@; and (3) it is common for a
defendant in the sex industry to Alater change[ ] her story and say[ ]
she doesn=t speak English.@  Appellant complains on appeal about Officer Price=s response to a question regarding
work he had done with the F.B.I.: AI=m assigned on a task force . . . and
we target the pimps that prey on the young girls, underage girls they get to
prostitute for them.@  Appellant also complains on appeal about the State=s reference to Officer Price=s statement during closing argument: AYou heard Officer Price get up there
and say F.B.I. has to get involved because [a] cartel is running these
operations.@








The jury found appellant guilty as charged in the information
and sentenced her to confinement for 180 days and a fine of $2,000, the maximum
penalty allowed by the statute under which she was prosecuted.  See Tex.
Penal Code Ann. __ 12.22, 43.02(c) (Vernon 2003).  The trial court signed its judgment on
the jury=s verdict and sentence on June 18,
2008.

Appellant filed a motion with the trial court to substitute
counsel and allow trial counsel to withdraw on June 24, 2008.  The trial court
granted appellant=s motion, although the record is silent regarding when the
trial court signed an order to that effect.

Appellant filed a motion for new trial through substitute
counsel on July 17, 2008.  The trial court signed an order on July 18, 2008
setting appellant=s new trial motion for an evidentiary hearing on August 28,
2008.  At the hearing, the trial court admitted into evidence an affidavit
signed by appellant=s trial counsel and offered by appellant.  The State also
called appellant=s trial counsel as a witness.

Trial counsel stated in his affidavit that the complained-of
testimony from Miller, Surginer, and Hendrickson was Airrelevant@ and Aextremely prejudicial,@ and that his failure to object Awas not the result of any trial
strategy.@  Trial counsel=s affidavit does not mention Officer Price=s testimony or the State=s closing argument.  Trial counsel
stated in his affidavit that the questions he asked Officer Miller during cross-examination
Adid not help the defense=s case@ and were Anot the result of any trial strategy.@








Trial counsel retreated from his affidavit when he testified
at the motion for new trial hearing.  Trial counsel testified that he believed
the complained-of testimony of Officer Miller and Sergeant Hendrickson went to
their training and experience and was admissible as part of their Adaily activity.@[1]  Trial counsel further testified
that he did not object to Officer Surginer=s complained-of testimony because he
believed it was more helpful to appellant than harmful.  Trial counsel
testified that he had no tactical reason for failing to object to Officer Price=s testimony quoted above or to the
State=s reference to it during closing
argument.  Trial counsel also testified that his intention during
cross-examination of Officer Miller was to attack Officer Miller=s credibility and professionalism and
the strength of the State=s case against appellant Abecause it=s his words against her words.@

Additionally, trial counsel opined that appellant deserved a
new trial because AI wasn=t that effective at trial.@  When questioned about why he
thought he Awasn=t that effective at trial,@ trial counsel testified that his
assessment was based on the result of the trial rather than any failure to
provide competent representation.

Following the hearing, the trial court granted appellant=s motion as to punishment only in an
order signed on August 28, 2008.[2]  The trial
court signed its judgment following appellant=s new punishment trial on September
30, 2008, assessing punishment as confinement for 180 days and a fine of
$2,000.  The trial court=s judgment suspended appellant=s sentence and placed her on
community supervision for one year.

Appellant filed her second motion for new trial on October
20, 2008.  The trial court heard argument from appellant and the State on
appellant=s motion on October 31, 2008, and signed an order denying appellant=s motion that same day.

Standard
of Review








We review claims of ineffective assistance of counsel under
the familiar standard set forth in Strickland v. Washington, 466 U.S.
668 (1984).  Under Strickland, an appellant must establish that (1) his
trial counsel=s representation was deficient; and (2) the deficient performance was so
serious that it deprived the appellant of a fair trial.  Id. at 687.  To
establish these prongs, the appellant must prove by a preponderance of the
evidence that counsel=s representation fell below the objective standard of
prevailing professional norms; and there is a reasonable probability that, but
for counsel=s deficiency, the result of the proceeding would have been different.  Id.
at 690-94.  A reasonable probability is one sufficient to undermine confidence
in the outcome of the trial.  Id. at 694; Ex parte Ellis, 233
S.W.3d 324, 330-31 (Tex. Crim. App. 2007).  This test is applied to claims
arising under the Texas Constitution as well as those arising under the United
States Constitution.  Hernandez v. State, 726 S.W.2d 53, 56-57 (Tex.
Crim. App. 1986) (en banc).  When, as here, a defendant asserts ineffective
assistance of counsel in a motion for new trial, we review the trial court=s denial of the motion for abuse of
discretion.  Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App.
2004), superseded in part on other grounds by Tex. R. App. P. 21.8(b).

Analysis

Appellant contends that her trial counsel provided
ineffective assistance by (1) failing to object to certain testimony from each
of the State=s four witnesses; (2) failing to object to improper jury argument during
the State=s closing argument; and (3) asking improper questions and eliciting
damaging testimony during cross-examination of the arresting officer.  The
State contends that appellant fails to meet her burden under both prongs of Strickland.








Appellant complains on appeal specifically about trial
counsel=s conduct in eliciting or failing to
object to the following testimony and argument: (1) Officer Miller=s testimony regarding child
pornography, the Innocence Lost project, prostitution Acircuits@ or Atracks,@ pimps bringing prostitutes to
Houston from California, prostitutes telling him that Athe money=s good in Houston,@ and massage parlors being willing to
perform masturbation for extra cash; (2) Officer Miller=s reference to a Awhore@ and repetition of portions of his
direct testimony during cross-examination; (3) Sergeant Hendrickson=s testimony about crimes that Ago hand in hand with prostitution,@ such as human trafficking; (4)
Officer Surginer=s testimony about another masseuse at the Thai Garden being
willing to perform masturbation and his inability to arrest her because she
wouldn=t agree to a specific fee; (5)
Officer Price=s testimony about his assignment to a task force targeting pimps that
prey on underage girls; and (6) the State=s reference to Officer Price=s statement during closing argument: AYou heard Officer Price get up there
and say F.B.I. has to get involved because [a] cartel is running these
operations.@  

I.         The
Strickland Standard

A criminal defendant is entitled to effective assistance of
counsel.  Strickland, 466 U.S. at 680; Stafford v. State, 813
S.W.2d 503, 506 (Tex. Crim. App. 1991) (en banc); see also U.S. Const.
amend VI.  This right does not entitle a defendant to errorless counsel or
counsel whose competency is judged by hindsight.  Stafford, 813 S.W.2d
at 506.  Rather, this right affords a criminal defendant an attorney reasonably
likely to render reasonably effective assistance.  Strickland, 466 U.S.
at 680; Stafford, 813 S.W.2d at 506.  When reviewing a claim of
ineffective assistance, we look to the totality of the representation and not
to isolated instances of error or to a single portion of the trial.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); Rivera-Reyes v.
State, 252 S.W.3d 781, 788-89 (Tex. App.CHouston [14th Dist.] 2008, no pet.).

When evaluating prejudice under Strickland, any
constitutionally deficient acts or omissions will be considered in light of the
totality of the evidence before the judge or jury.  Strickland, 466 U.S.
at 695; Ex parte Ellis, 233 S.W.3d at 331.  We must presume, absent a
challenge to the sufficiency of the evidence, that the judge or jury acted
according to law.  Strickland, 466 U.S. at 694.  A verdict only weakly
supported by the record is more likely to have been affected by errors than one
with overwhelming record support.  Id. at 696.








Relying heavily on trial counsel=s affidavit, appellant assails his
performance at trial.  She vigorously criticizes not only his inaction in
failing to object to irrelevant testimony, but also his action in eliciting
inappropriate and inadmissible testimony from Officer Miller during cross-examination. 
Appellant contends that Strickland=s first prong is satisfied because
trial counsel=s affidavit establishes that he had no reasonable trial strategy and
provided objectively deficient representation.

Our review, however, encompasses more than trial counsel=s affidavit.  The State called trial
counsel as its lone witness at the new trial hearing and questioned him about
his representation of appellant.  Trial counsel testified that his trial
strategy consisted of attacking Officer Miller=s credibility and thereby weakening
the State=s case.  Trial counsel also testified that based on his 12 years of
training and experience he believed that the jury would find appellant=s testimony credible, and that by
testifying she would improve her chances of establishing her innocence or, if
found guilty, receiving community supervision.  Trial counsel further testified
that he (1) met with appellant numerous times over the 10 months preceding
trial to prepare her to testify; (2) reviewed the offense report more than
once; (3) reviewed the record in preparation for trial; (4) conducted routine
discovery; and (5) visited the Thai Garden four or five times and interviewed
other masseuses working there.

Appellant urges that trial counsel=s affidavit establishes his
objectively deficient representation, and that the trial court erred in
crediting trial counsel=s live testimony over his sworn affidavit.  Appellant invites
us to conclude that trial counsel=s affidavit is more credible than his
live testimony because the affidavit was generated before trial counsel was
contacted by the State, and to hold that trial counsel=s representation was deficient.[3]








We note that a trial judge has discretion in appropriate
circumstances to discount conclusory factual assertions in an attorney=s affidavit proffered to establish
ineffective assistance of counsel.  Charles, 146 S.W.3d at 210 (citing
Tex. R. Civ. P. 166a(c)).  A trial judge is not required to believe factual
assertions made in a sworn affidavit, even when they are uncontradicted.  See
id. at 213.  A trial judge may believe all, some, or none of an affidavit. 
Id.  By the time a claim for ineffective assistance reaches the
courtroom, the attorney and former client may be aligned in their memories and
positions.  Id. at 210.  Under these circumstances, it is particularly
important that those memories and positions be tested via cross-examination.  Id. 
Here, the trial court had to weigh both trial counsel=s affidavit and his testimony at the
new trial hearing.  We must defer to the trial court=s ruling to the extent that any
reasonable view of the record will support that ruling.  Id.     

In any event, it is not necessary to determine whether trial
counsel=s representation was deficient if
appellant cannot satisfy the second Strickland prong.  AThere is no need for a court deciding
an ineffective assistance claim . . . to address both components of the inquiry
if the defendant makes an insufficient showing on one.@  Strickland, 466 U.S. at
697.  AIn particular, a court need not
determine whether counsel=s performance was deficient before examining the prejudice
suffered by the defendant as a result of the alleged deficiencies.@  Id.  The court=s purpose in reviewing an
ineffectiveness claim is not to grade trial counsel=s performance.  Id.  AIf it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice, which we
expect will often be so, that course should be followed.@  Id.  ACourts should strive to ensure that
ineffectiveness claims not become so burdensome to defense counsel that the
entire criminal justice system suffers as a result.@  Id.

Following this teaching, we turn to Strickland=s second prong.  This is the juncture
at which the majority and the dissent part company.

In addressing Strickland=s prejudice requirement, the analysis
below considers the totality of the evidence before the jury.  See
Strickland, 466 U.S. at 695; Ex parte Ellis, 233 S.W.3d at 331.  The
dissent undertakes no record analysis to determine whether there is a
reasonable probability that the proceeding=s result would have been different
but for counsel=s asserted deficiencies.  See Strickland, 466
U.S. at 690-94.  Instead, the dissent presumes prejudice.








The circumstances here cannot be characterized as A[a]ctual or constructive denial of the
assistance of counsel altogther@ so as to justify a presumption of prejudice.  See id.
at 692.  Appellant=s trial counsel repeatedly met with her before trial,
conducted discovery, interviewed other masseuses working at the Thai Garden,
and fully participated in all aspects of appellant=s trial.  This is not a situation in
which trial counsel Aentirely failed to subject the prosecution=s case to meaningful adversarial
testing@ by, for example, declining to
participate in jury selection; enter a plea; make an opening and closing argument;
cross examine witnesses; make objections; offer a defense; request special jury
instructions; or offer evidence regarding punishment.  See Cannon v. State,
252 S.W.3d 342, 350 (Tex. Crim. App. 2008).  These dissimilar situations cannot
be made similar by equating the sleeping lawyer and the lawyer accused of being
Aasleep at the switch@ when inadmissible testimony was
proffered.  Such reasoning would negate Strickland=s second prong whenever an
ineffective assistance claim is predicated on trial counsel=s failure to act.

The approach of eschewing analysis under Strickland=s second prong also is reflected in
cases upon which the appellant relies for support.  See Brown v. State,
974 S.W.2d 289, 296 (Tex. App.BSan Antonio 1998, pet. ref=d) (Green, J., dissenting) (AIn view of the entire record in this
case, there is nothing to suggest that the result of the trial would have been
different had the claimed errors of counsel not occurred.@); see also Greene v. State,
928 S.W.2d 119, 126-27 (Tex. App.BSan Antonio 1996, no pet.).  We
decline to endorse this approach.








Other cases invoked by the appellant underscore the importance
of examining the totality of the evidence under Strickland=s second prong.  See Wood
v. State, 260 S.W.3d 146, 149 (Tex. App.BHouston [1st Dist.] 2008, no pet.)
(new trial warranted based on ineffective assistance under circumstances in
which Athe evidence of guilt at trial is not
overwhelming@); Hall v. State, 161 S.W.3d 142, 156 (Tex. App.BTexarkana 2005, pet. ref=d) (AFailing to object to the omission of
an accomplice witness instruction allowed the jury to convict without any
corroborating evidence.@); see also Fuller v. State, 224 S.W.3d 823, 837 (Tex.
App.BTexarkana 2007, no pet.) (AThe State=s case-in-chief consisted of the
testimony of J.W. and four witnesses, each of whom testified in some manner
that J.W. was a truthful and credible witness.@); Sessums v. State, 129
S.W.3d 242, 263 (Tex. App.BTexarkana 2004, pet. ref=d) (failure to object to improper
bolstering testimony was prejudicial Ain a case with no physical evidence,
no eyewitnesses, and no testimony from the victim@); cf. Thrift v. State, 134
S.W.3d 475, 479 (Tex. App.BWaco 2004) (reversing based on erroneous admission of
evidence in case in which A[t]he evidence was not overwhelming that Thrift was guilty@), aff=d, 176 S.W.3d 221 (Tex. Crim. App. 2005).

The totality of the record also can establish prejudice from
ineffective assistance by demonstrating that the jury focused on a particular
aspect of inadmissible evidence.  See Walker v. State, 195 S.W.3d 250,
263 (Tex. App.BSan Antonio 2006, no pet.) (A[T]he record quite clearly
establishes that the jury focused on the stale conviction for assaulting a
police officer.  Less than ten minutes after the jury retired to deliberate, it
sent a note asking for clarification of Walker=s testimony about the arrest.@).  It may establish that the
asserted instance of ineffective assistance was only one of multiple factors at
issue.  See Taylor v. State, 93 S.W.3d 487, 495-510 (Tex. App.BTexarkana 2002, pet. ref=d).  Or it may establish that A[t]rial counsel=s deficiency in failing to discover a
key piece of evidence strikes at the heart of the effective assistance of
counsel@ in a case in which A[s]eeking and obtaining inculpatory C or exculpatory C statements in the defendant=s own voice is an essential part of
case investigation, preparation for trial, and trial strategy.@  Johnson v. State, 172 S.W.3d
6, 19 (Tex. App.BAustin 2005, pet. ref=d).  Such circumstances are not
present here.

As discussed more fully below, the totality of the record
here defeats any contention that Athe evidence of guilt at trial is not
overwhelming.@  Wood, 260 S.W.3d 3d at 149.  The overwhelming nature of the
evidence presented against appellant bears strongly on her claim of prejudice
under Strickland=s second prong.

 








II.        Application
of Strickland=s Prejudice Prong

An appellant claiming ineffective assistance of counsel must
identify on appeal objective facts in the record affirmatively proving that she
was prejudiced by counsel=s asserted incompetence.  See Bone v. State, 77 S.W.3d
828, 836-37 & n.29 (Tex. Crim. App. 2002) (citing Ladd v. State, 3
S.W.3d 547, 570 (Tex. Crim. App. 1999), and Mitchell v. State, 989
S.W.2d 747, 748 (Tex. Crim. App. 1999)).  Each case must be judged on its own
unique facts.  Davis v. State, 278 S.W.3d 346, 353 (Tex. Crim. App.
2009).  A prejudice analysis under Strickland is not identical to an
analysis of sufficiency of the evidence.  Id.

A person commits misdemeanor prostitution if she knowingly
offers or agrees to engage in sexual conduct for a fee.  Tex. Penal Code Ann. _ 43.02(a)(1), (c) (Vernon 2003).  ASexual conduct@ includes Asexual contact,@ or Atouching of the anus, breast, or any
part of the genitals of another person with intent to arouse or gratify the
sexual desire of any person.@  Id. _ 43.01(3), (4) (Vernon 2003).

Reviewing appellant=s contentions in light of the
totality of the evidence, see Strickland, 466 U.S. at 695, we believe
the trial court acted within its discretion in concluding that appellant failed
to establish a reasonable probability that the outcome of the guilt-innocence
phase of appellant=s trial would have been different but for trial counsel=s asserted deficiencies.  








Officer Miller testified that (1) the Thai Garden advertised
in a publication known by Houston Police to market massage parlors dealing in
prostitution; (2) a former Thai Garden patron posted a message on a website
that critiques massage parlors stating that the patron received masturbation
there; (3) Officer Miller was not asked to fill out a medical form upon his
arrival at the Thai Garden as he would have been at a Alegitimate massage parlor@; (4) appellant led him to a bedroom
with a mattress on the floor, but did not provide him a towel to cover himself
as he would have received at a Alegitimate massage parlor@; (5) appellant told him to Aget comfortable,@ which is sex industry code for Aremove all of your clothing@; (6) in the middle of Officer Miller=s massage, appellant told a caller
over the telephone who asked if she performed AThai slides@ to A[j]ust come in and see@; (7) appellant removed her clothes
and continued massaging Officer Miller in the nude for an additional $100 fee;
(8) appellant performed a AThai slide@ on him; (9) appellant refused to perform oral sex or
intercourse, but agreed to masturbate Officer Miller for $100; and (10)
appellant offered to let Officer Miller Afuck her tits@ as part of the activity included in
this $100 fee.

Sergeant Hendrickson testified that (1) Vice Division
officers found an advertisement for the Thai Garden in a publication known to
market massage parlors dealing in prostitution; (2) he authorized Officers
Miller, Surginer, and Price to perform an undercover investigation of the Thai
Garden; (3) Officer Miller called him during the investigation to inform him
that a Acase was made@ for prostitution; (4) Aget comfortable@ is sex industry code for Aremove all of your clothing@; and (5) two other masseuses at the
Thai Garden were detained and issued citations when appellant was arrested, but
were not themselves arrested or criminally charged.

Appellant took the stand and testified to the following: (1)
she had resided in Harris County for 19 years; (2) she speaks only
conversational English; (3) she is a licensed masseuse; (4) she did not say the
words Aget comfortable@ to Officer Miller; (5) she
customarily leaves a towel on the massage bed for customers to cover
themselves; (6) she did not answer a phone call while massaging Officer Miller;
(7) she removed her dress for $100, but not her bra and panties; (8) she
performed no sexual act on Officer Miller; (9) she did not ask Officer Miller
if he wanted to Afuck her tits@; and (10) Officer Miller lied in his testimony.








However, the State impeached appellant on cross-examination
by (1) asking her if she had taken her massage licensing test in Houston and C after she said that she had C pointing out that the test is
translated for non-English speakers only in Austin; (2) obtaining an admission
that she has a Texas driver=s license and that the driver=s license test is performed in
English; and (3) obtaining an admission that massaging a customer while wearing
only a bra and panties is forbidden by the Texas Department of State Health
Services.  Appellant later claimed on re-direct examination that she took her
massage licensing test in Austin.

Furthermore, the State presented a significant amount of
evidence that raised serious questions regarding appellant=s veracity and credibility,
particularly concerning her defense that Officer Miller misunderstood her
because she did not speak English well.  Officer Miller testified that (1) he
had worked as a Houston Police Officer for 13 years, including seven in the
Vice Division; (2) appellant spoke English to him when he made an appointment
with her over the telephone; (3) appellant spoke English Avery well@ with him during his investigation;
(4) appellant spoke English to all of the officers while they obtained her
arrest information; and (5) it is common for masseuses arrested for
prostitution to falsely claim after arrest that they do not speak English.  

Sergeant Hendrickson testified that (1) he had worked for the
Houston Police Department for 38 years, including 18 in the Vice Division; (2)
appellant spoke fluent English after her arrest during interrogation; and (3)
it is common after a prostitution arrest for defendants to pretend not to speak
English and raise Amisunderstanding@ as a defense.  Officer Surginer
testified that (1) he had been a Houston Police Officer for 29 years; and (2)
appellant spoke Aclear, good English@ to him when she answered the door to
the Thai Garden.  Officer Price testified that (1) he had worked in the Vice
Division of the Houston Police Department for 24 years; (2) he observed
appellant speaking English Avery well@ without Aa heavy accent or broken English@; and (3) it is common for a
defendant in the sex industry to Alater change[ ] her story and say[ ]
she doesn=t speak English.@

All of the evidence outlined above is independent of the
testimony that appellant says her trial counsel should have objected to or
should not have elicited.  Appellant does not contend that her trial counsel
should have objected to the evidence outlined above, or that he was ineffective
because he did not do so.  Appellant does not contend that the evidence
outlined above was inadmissible.








To support her claim of prejudice, appellant directs our
attention to trial counsel=s statement during the motion for new trial hearing that AI wasn=t that effective at trial.@  However, when questioned about this
statement, trial counsel stated that his assessment was based on the result of
the trial rather than any failure to provide competent representation.

Considering the overwhelming evidence of appellant=s guilt and the substantial evidence
before the jury that appellant=s self-serving testimony was not credible, along with
appellant=s inability to specify any objective evidence of prejudice, the trial
court did not abuse its discretion in concluding that appellant failed to
establish that the result of the guilt-innocence stage of her trial would have
been different but for trial counsel=s asserted deficiencies.  See
Strickland, 466 U.S. at 695; Ex parte Ellis, 233 S.W.3d at 331;
Bone, 77 S.W.3d at 836-37 & n.29.  

A number of cases underscore this conclusion.  See
Hernandez v. State, No. 14-07-00124-CR, 2008 WL 2262046, at *8 (Tex. App.CHouston [14th Dist.] May 29, 2008,
pet. ref=d) (mem. op., not designated for
publication), cert. denied, 129 S. Ct. 2164 (2009); Crawford v. State,
No. 11-03-00056-CR, 2004 WL 292046, at *2 (Tex. App.CEastland Feb. 12, 2004, no pet.) (not
designated for publication); Davis v. State, No. 01-01-00624-CR, 2002 WL
31388735, at *5 (Tex. App.CHouston [1st Dist.] Oct. 24, 2002, pet. ref=d) (mem. op., not designated for
publication); Jackson v. State, No. 08-01-00090-CR, 2002 WL 1874857, at
*10 (Tex. App.CEl Paso Aug. 15, 2002, pet. ref=d) (not designated for publication); see
also Lane v. State, 257 S.W.3d 22, 29 (Tex. App.CHouston [14th Dist.] 2008, pet. ref=d); Vasquez v. State, No.
14-07-00802-CR, 2009 WL 943868, at *12 (Tex. App.CHouston [14th Dist.] Apr. 9, 2009, no
pet.) (mem. op., not designated for publication); Walker v. State, No.
14-07-00435-CR, 2008 WL 5341295, at *4 (Tex. App.CHouston [14th Dist.] Dec. 23, 2008,
pet. ref=d) (mem. op., not designated for
publication); Hayward v. State, No. 14-01-01185-CR, 2006 WL 162582, at
*5 (Tex. App.CHouston [14th Dist.] Jan. 24, 2006, no pet.) (mem. op., not designated
for publication).








The defendant in Hernandez was convicted of capital
murder and sentenced to life imprisonment.  Hernandez, 2008 WL 2262046,
at *1.  On appeal, the defendant raised numerous challenges, including a
challenge to the effectiveness of trial counsel on three different grounds.  Id.
at *1, *6.

The evidence C the sufficiency of which was not challenged on appeal C established that the defendant (1)
shot the complainant in the back of the head while the complainant sat in his
car; (2) took cash from the complainant; (3) moved the complainant=s body from the driver=s seat of the car and drove away in
it; (4) dumped the complainant=s body in a church parking lot, where it was discovered the
next day; and (5) abandoned the complainant=s car in a convenience store parking
lot.  Id. at *1.  An informant notified police that the defendant may
have been involved in the complainant=s death; police questioned the
defendant about the murder after his arrest for an unrelated offense.  Id.

Early on during the videotaped police interviews, the
defendant provided a written statement that he had witnessed the complainant=s murder.  Id.  After the
first interview, the defendant led police to several locations where he
indicated that evidence related to the murder was hidden, but no evidence was
recovered.  Id. at *2.  The defendant briefly escaped police custody but
was recaptured and transported to police headquarters.  Id.  In later
interviews, the defendant admitted killing the complainant and asserted that
the gun Ajust went off@ while he and the complainant were
struggling over it during a drug transaction.  Id.  Following this
confession, the defendant gave police details regarding locations where some
physical evidence of the murder could be found.  Id.








The defendant contended that trial counsel was ineffective
for failing to (1) preserve error on his motion to suppress; (2) exclude
inadmissible prior convictions; and (3) object to 12 different instances of
damaging testimony from multiple witnesses.  Id. at *6-*8.  These
statements included testimony that (1) the defendant had been in jail
previously; (2) the defendant had been seen in the area of the murder; (3)
people in the neighborhood thought that the defendant had some role in the
murder; (4) people implicated in the murder by the defendant had alibis for the
time of the murder; (5) described the defendant=s brief escape from custody; and (6)
the defendant made false statements to police during their investigation of the
murder.  Id. at *7-*8.

After resolving the first two ineffectiveness claims via the
first prong of Strickland, the court held with regard to the failure to
object to damaging testimony from numerous witnesses that Anotwithstanding any alleged error in
failing to object to these statements, we cannot say that a reasonable
probability exists that the result of appellant=s trial would have been different had
his counsel objected to them.@  Id. at *8.  AAnd, even if his trial counsel were
deficient by failing to object to some of these statements, he has not
established that, but for this deficiency, the outcome of the proceeding would
have been different.@  Id.

This case is similar to Hernandez in that (1) there is
overwhelming untainted and unchallenged evidence of appellant=s guilt; and (2) the ineffectiveness
rejected on prejudice grounds stems from several instances of damaging and
assertedly inadmissible testimony from multiple witnesses.  See id. at
*1-*2, *7-*8.  Notwithstanding the admission of this assertedly improper
evidence, the prejudice prong was not satisfied in Hernandez.  The same
conclusion applies here.

In Crawford, the defendant was convicted of delivering
less than one ounce of cocaine and sentenced to confinement for 10 years.  Crawford,
2004 WL 292046, at *1.  The defendant challenged the effectiveness of trial
counsel on two grounds on appeal, as well as the proportionality of his
sentence to the offense of which he was convicted.  Id. at *1-*2.








The defendant asserted that his trial counsel was ineffective
for failing to object to the State=s (1) improper reference to the
penalty phase of the trial during closing argument in the guilt/innocence phase
of the trial; and (2) two references to the defendant as a Apimp@ during the introduction of the
defendant=s prior criminal record and closing argument in the penalty phase of the
trial.  Id. at *1.  The court of appeals held that Aeven if appellant=s trial counsel=s representation was deficient,
appellant has failed to demonstrate that, but for counsel=s deficient performance, there is a
reasonable probability that the result of the proceeding would have been
different.@  Id. at *2.  The court based its conclusion on the overwhelming
evidence against the defendant found in the record: (1) he delivered the
cocaine to undercover police officers; (2) he had previously been convicted of
five felonies, including three controlled substance felonies; and (3) he had
spent nine of the previous 12 years in prison.  Id.

This case is similar to Crawford in that (1) there is
overwhelming untainted and unchallenged evidence supporting the decision
reached by the jury; and (2) the ineffectiveness rejected on prejudice grounds
stems from the assertedly inadmissible and improper use of derogatory language
in open court when describing the events surrounding appellant.  See id.
at *1-*2.  Notwithstanding the use of this language, the prejudice prong was
not satisfied in Crawford.  The same conclusion applies here.

The defendant in Davis pled guilty to two counts of
aggravated sexual assault, and was sentenced to confinement for 99 years and
fined $10,000 for each count.  Davis, 2002 WL 31388735, at *1.  The
defendant contended on appeal that his trial counsel was ineffective for
failing to (1) object to two arguments by the State during closing arguments;
and (2) request a limiting instruction concerning otherwise inadmissible
underlying facts of an expert=s opinion.  Id.

With respect to trial counsel=s failure to request a limiting
instruction, the underlying facts at issue were portions of letters the
defendant wrote in response to personal ads that the State used when
cross-examining the defendant=s psychologist during the punishment phase of the trial.  Id.
at *4.  The defendant described these 20 pages of the record as Athe most injurious and prejudicial
evidence the prosecutor elicited, aside from the offense itself.@  Id.  In one of these
letters, the defendant wrote: AYou sound like just the whore I have been waiting for.@  Id.  The State referred to
the letters during closing argument as stating that the defendant Awants every woman to be his
cock-sucking whore.@  Id. at *5.  








The court held that, under the circumstances of the case, Aeven if trial counsel was deficient
for not requesting a limiting instruction, appellant did not meet his burden to
show that he was more severely punished because of the lack of that
instruction.@  Id.  The same conclusion applies here.  This conclusion is
underscored because the trial court granted a new trial as to punishment so
that her punishment would be decided by the trial court rather than the jury;
appellant has not shown she was more severely punished because of trial counsel=s asserted errors.

The defendant in Jackson was convicted of aggravated
assault and sentenced to confinement for 10 years.  Jackson, 2002 WL
1874857, at *1.  On appeal, the defendant challenged the factual sufficiency of
the evidence, the jury charge, and the effectiveness of trial counsel.  Id.
at *2, *5-*6.

The evidence consisted primarily of testimony from the
complainant and the defendant, with some corroborating evidence offered by
persons who did not witness the altercation at issue.  Id. at *1-*4. 
Considering that A[w]hat lay at issue was who had begun the altercation C that is, whether appellant had acted
in self-defense,@ the most vital disputed issues of the case were
characterized as a Aswearing match@ by the defendant.  See id. at
*3-*4, *6.








The testimony and evidence establishing the defendant=s guilt included (1) the defendant=s testimony that he may have used a
weapon during the altercation; (2) the defendant=s admission that he hit the
complainant; (3) the complainant=s testimony that the defendant pushed
her into his residence, straddled her, began hitting her in the head with a
flashlight, beat her into unconsciousness, and told her that he was going to
beat her to death; (4) the complainant=s testimony that the defendant struck
her again once she regained consciousness, at which point she stabbed him; (5)
the complainant=s testimony that after she stabbed the defendant he bit her
and beat her into unconsciousness with the flashlight again; (6) the
complainant=s testimony that she was naked and in pain once she regained
consciousness after the second beating, and ran naked to a detention center for
help; (7) the complainant=s testimony that she used her knife in self-defense; (8) a
nurse=s testimony that the complainant=s injuries the next morning during
examination were Afresh@ and consistent with the complainant=s narrative of events; (9) a
detective=s testimony that the complainant=s injuries were Afresh,@ and that the flashlight that the
complainant claimed had been used to beat her was found at the defendant=s residence; (10) the detective=s testimony that the cut on top of
the complainant=s head was consistent with being hit by a flashlight; (11)
photos of the complainant=s and the defendant=s injuries and blood found in the
defendant=s residence; (12) testimony that the defendant=s injuries were minor; (13) the
complainant=s testimony that the defendant had perpetrated violence against her
during their previous relationship; and (14) the defendant=s admission that he and the
complainant had a volatile relationship and that she had called for aid several
times.  Id. at *1-*4.

In addition, the complainant highlighted inconsistencies in
the defendant=s testimony to call his credibility into question: (1) the defendant initially
testified that he did not hit the complainant with an object and that she
suffered the cut on her head when he threw her against a chair, but later he
testified that he may have used a flashlight to hit the complainant; and (2)
the defendant told police after his arrest that he told the complainant to
leave and then went to sleep, but he testified in court that he told the
complainant to lay down and the two of them went to sleep together.  Id. at
*4.  








To address this evidence establishing the defendant=s guilt, the defendant asserted that
he acted in self-defense and presented the following evidence to refute the
State=s contentions: (1) his testimony that
the complainant voluntarily visited his residence and the two shared a bottle
of wine, after which the complainant asked him for money; (2) his testimony
that he had sex with the complainant, after which she again asked him for
money; (3) his testimony that the complainant began the altercation by stabbing
him twice after being rebuffed in her requests for money; and (4) his testimony
that he had never been convicted of domestic violence against the complainant
previously, and had been arrested only once in connection with any of the
incidents to which she testified.  Id. at *1-*4.  The defendant
also highlighted inconsistencies in the complainant=s recitation of the altercation.  Id.
at *4.

The defendant asserted multiple ineffective assistance claims
based upon trial counsel=s performance before and during trial.  Id. at *7. 
While the court of appeals resolved most of the defendant=s ineffective assistance claims via
the objective deficiency prong of Strickland, it relied upon the
prejudice prong to resolve two of his claims of ineffectiveness at trial: (1)
failure to urge his motion for a speedy trial; and (2) failure to object to improper
jury argument.  Id. at *8-*10.

Assuming that the first prong of Strickland had been
met in both of these instances, the court held that the defendant failed to
establish a reasonable probability that these errors contributed to his
conviction.  Id.  The court specifically noted that Acounsel repeatedly attempted to
discredit [the complainant] . . . brought out inconsistencies in [the
complainant=s] recollections . . . [and] provided an alternative theory, favorable to
his client, of the chronology of the events.@  Id. at *10.  The court held
that Abased on the totality of the
representation, we believe that appellant received effective assistance.@  Id.

This case is similar to Jackson in that (1) it may be
characterized as a Aswearing match@ between appellant and the
complainant with respect to the vital disputed issues; (2) there is substantial
untainted and unchallenged evidence of appellant=s guilt; (3) appellant was not
precluded from asserting her defense by counsel=s asserted ineffectiveness; and (4)
appellant=s defense included attacking the credibility of the complainant.  See
id. at *1-*4, *8-*10.








As in the cases summarized above, the untainted evidence of
appellant=s guilt in this case is overwhelming, and confidence in the outcome of
appellant=s trial is not undermined on this record.  See Hernandez, 2008 WL
2262046, at *8; Crawford, 2004 WL 292046, at *2; Davis, 2002 WL
31388735, at *5; Jackson, 2002 WL 1874857, at *10; see also Lane,
257 S.W.3d at 29 (inadmissible expert testimony effectively instructing jury
that complainant=s testimony regarding sexual assaults by appellant during
complainant=s childhood was credible did not satisfy Strickland=s prejudice prong in light of
untainted testimony of complainant and her sister implicating appellant);
Vasquez, 2009 WL 943868, at *12 (inadmissible expert testimony regarding
firearms and ballistics testing of murder weapon did not satisfy Strickland=s prejudice prong in light of
untainted testimony of medical examiner, investigating officer, and accomplice
implicating appellant); Walker, 2008 WL 5341295, at *4 (complained-of
evidence that appellant was involved in collision while driving car used in
earlier bank robbery did not meet Strickland=s prejudice prong in light of
testimony from complainant, bank guard, and vehicle owner implicating
appellant); Hayward, 2006 WL 162582, at *5 (hearsay testimony from crime
scene investigator regarding location of evidence discarded by appellant did
not meet Strickland=s prejudice prong in light of evidence that appellant was
arrested driving same car reported speeding away from murder scene, appellant=s admission that she was present at
murder scene and wrestled with complainant, and expert testimony linking
appellant to murder).

Because the trial court acted within its discretion in
concluding that appellant did not establish a reasonable probability that the
result at trial would have been different but for trial counsel=s assertedly deficient performance, a
new trial is not warranted.  See Strickland, 466 U.S. at 694; Ex
parte Ellis, 233 S.W.3d at 330-31; Charles, 146 S.W.3d at 208; see
also Hernandez, 2008 WL 2262046, at *8; Crawford, 2004 WL
292046, at *2; Davis, 2002 WL 31388735, at *5; Jackson, 2002 WL
1874857, at *10.

We overrule appellant=s issue regarding denial of her
motion for new trial based on ineffective assistance of counsel.

 

 

 

 








Conclusion

The trial court=s order denying appellant=s motion for new trial is affirmed.

 

 

 

 

/s/        William J. Boyce

Justice

 

 

 

Panel
consists of Justices Anderson, Guzman, and Boyce.(Anderson, J. Dissenting)

Publish C Tex.
R. App. P. 47.2(b).









[1]           Appellant
emphasizes that trial counsel used the phrase Adaily activity@ rather than Atraining
and experience@ in explaining at the motion for new trial hearing why
he thought Officer Miller=s and Sergeant Hendrickson=s complained-of testimony was admissible.  However,
the relevant inquiry for a claim of ineffective assistance based on a failure
to object is whether the testimony was admissible C not the precision of trial counsel=s terminology.  See McFarland v. State, 845
S.W.2d 824, 846 (Tex. Crim. App. 1992), overruled on other grounds by
Bingham v. State, 915 S.W.2d 9 (Tex. Crim. App. 1994); Scantlin v. State,
No. 14-06-00314-CR, 2007 WL 1892308, at *4 (Tex. App.CHouston [14th Dist.] July 3, 2007, no pet.) (mem. op.,
not designated for publication).   





[2]           The
trial court granted appellant=s motion for
new trial as to punishment because the jury originally assessed appellant=s punishment despite appellant=s May 21, 2008 motion requesting that the trial court
assess punishment in the event of a guilty verdict.





[3]           Appellant
emphasizes trial counsel=s testimony that the assistant district attorney who
prosecuted appellant contacted trial counsel a few days before the hearing and
asked, A[D]o you know that you could be exposed to liability?@  This testimony was proffered to the trial judge, who
had discretion to accord it whatever weight and credibility she chose in
determining which portions, if any, of trial counsel=s affidavit to believe.  See Charles, 146
S.W.3d at 210 & 213.